## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-00868 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| A2Z CUST2MATE SOLUTIONS CORP., | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against A2Z Cust2Mate Solutions Corp. ("Cust2Mate" or "Defendant") for infringement of United States Patent Nos. 10,977,672 ("the '672 Patent"), 11,042,890 ("the '890 Patent"), 11,301,880 ("the '880 Patent"), 11,049,120 ("the '120 Patent"), and 12,354,121 ("the '121 Patent") (collectively the "Patents-in-Suit").

### THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant A2Z Cust2Mate Solutions Corp. is a company organized and existing under the laws of British Columbia, Canada, with a principal place of business located at 1600-609 Granville Street, Vancouver, British Columbia V7Y 1C3 Canada.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.     This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.     Cust2Mate is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Eastern District of Texas ("District"), including conduct giving rise to this action.

6.     Cust2Mate has conducted and does conduct business within the State of Texas.

7.     On information and belief, Cust2Mate has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.     This Court has personal jurisdiction over Cust2Mate at least because Cust2Mate has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. Cust2Mate, thus, on information and belief, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.     This Court likewise has personal jurisdiction over Cust2Mate at least because, on information and belief, Cust2Mate has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Cust2Mate would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over Cust2Mate in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Cust2Mate's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) on information and belief, purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3).

12.     Cust2Mate offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.

13.     Cust2Mate's CEO has given a press interview where he confirmed that Cust2Mate had ongoing operations in the United States through a business relationship with at least one grocery store chain as well as at least one ongoing pilot program in Texas. https://www.grocerydoppio.com/executive-perspective/cust2mates-hybrid-smart-carts-elevating-shopper-security-and-operational-efficiency.

14.     As a further example, Cust2Mate indicates that it follows the Texas Data Privacy and Security Act in its posted Privacy Policy posted on its website.  https://cust2mate.com/privacy-policy/.  This Privacy Policy further shows that Cust2Mate has directed its activities towards this district, including by collecting information through its products and/or services, including those accused herein of infringement, regarding customers and potential customers located in Texas and in this District.

**ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY**

15.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

16.     At the core of Alpha Modus's technology portfolio, including the Patents-in-Suit, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

17.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Patents-in-Suit.

18.     On January 11, 2024, Alpha Modus entered into a substantial intellectual property licensing agreement with GZ6G Technologies Corp. *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/12/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/. This agreement authorized GZ6G Technologies Corp. to utilize Alpha Modus's patented technology in their operations, with a particular focus on the Stadium and Event Management industry.

19.     The agreement with GZ6G Technologies Corp., a provider of advanced technology solutions for connectivity and digital experiences, is indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '672 PATENT

20.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit A.

21.     The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

22.     The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

23.     The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

24.     The '672 Patent is valid and enforceable.

25.     The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

26.     The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

27.     The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and

system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

28.     The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



FIG. 1



FIG. 2

29.     The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

30.     Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
> (i) one or more server processors, and,
> (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
>> (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,
>> (B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,
>> (C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,
>> (D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,
>> (E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and
>> (F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

## THE '890 PATENT

31.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit B.

32.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

33.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

34.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

35.    The '890 Patent is valid and enforceable.

36.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

37.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

38.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1

*FIG. 2*

39.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

40.    Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and
    (iii) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering object identification information of a product that the person is interested in purchasing, and
        (B) gathering sentiment information of the person with respect to the product;
(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

    (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

    (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

    (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

    (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

41.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit C.

42.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

43.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

44.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

45.    The '880 Patent is valid and enforceable.

46.     The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

47.     The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

48.     The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

49.     The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



FIG. 1



FIG. 2

50.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

51.    Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
    (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

(A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

(B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

(ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

(iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

(iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '120 PATENT

52.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,049,120 (the "'120 Patent") titled "Method And System For Generating A Layout For Placement Of Products In A

Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '120 Patent is attached to this Complaint at Exhibit D.

53.    The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

54.    The Patent Office issued the '120 Patent on June 29, 2021, after a full and fair examination.

55.    The '120 Patent is valid and enforceable.

56.    The '120 Patent introduces a novel system for tracking customer movement and for optimizing the layout of products provided within a retail store setting.

57.    The '120 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring and analyzing consumer behavior in the retail store in order to better optimize the layout of product available within the store using that information and analysis thereof. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

58.    The inventors of the '120 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the layout of products within the retail store using behavior information from consumers. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing updated store layout suggestions by analyzing that information in order to enhance realized purchases and revenues from shoppers.

59.    The '120 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the layout of products available in the store.

14



*FIG. 1*



*FIG. 2*

60.     The '120 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and generate improved store layouts utilizing data analysis.

61.     Claim 1 of the '120 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    shopping activities of a plurality of persons at a retail store, wherein
        (i) the retail store has a first layout of products within and about the retail
            store,
        (ii) persons in the plurality of persons are in proximity to at least one of
            the one or more information monitoring devices at the retail store,
        (iii) the one or more information monitoring devices are operably
            connected to (A) a server, (B) one or more databases, or (C) both,

(iv) the one or more information monitoring devices comprise one or more video image devices,

(v) the step of gathering information using the one or more information monitoring devices comprises

    (A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,

    (B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and

    (C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

(c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

## THE '121 PATENT

62.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit E.

63.    The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

64.     The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

65.     The '121 Patent is valid and enforceable.

66.     The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

67.     The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

68.     The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

69.     The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1



FIG. 2

70.     The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

71.     Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:
(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein
        (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

(ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

(iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

(i) the gathered shopping information comprises gathered traffic information of the first person, wherein

(A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

(ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

(A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

(iii) the gathered shopping information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a

listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

## <u>CUST2MATE</u>

72.    Cust2Mate, a company founded in 1988, purports to offer smart cart products (the "Accused Products") to retailers which track items placed in customers' carts, recognize the items in the cart, enable in-cart payment by the consumer without requiring standing in check-out lines, and allow retailers to provide their customers with in-store promotions for discounted products.

73.    Cust2Mate's customers include at least one supermarket chain which has implemented Cust2Mate smart cart products in its brick-and-mortar stores.

74.    At least one of Cust2Mate's customers, Morton Williams, has been acquired by Wakefern Food Corporation ("Wakefern"). Wakefern was accused of infringing the Patents-in-Suit in *Alpha Modus, Corp. v. Wakefern Food Corporation, et al.*, case no. 2:24-cv-01056 (E.D. Tex.). Wakefern, and its subsidiary, Morton Williams, have received notice of the patents-in-suit through this litigation.

75.    Cust2Mate's smart cart products practice the patented systems and methods of the Patents-in-Suit.

76.    Cust2Mate has been aware of Alpha Modus and the Patents-in-Suit at least as early as the filing of this Complaint.

77.    The financial gains accrued by Cust2Mate through the use of Alpha Modus's patented technology have been substantial, providing Cust2Mate's customers with competitive advantages in the retail market.

78.    The benefits reaped by Cust2Mate through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

79.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Cust2Mate, which has led to significant commercial gains for Cust2Mate and its customers at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

### (DIRECT INFRINGEMENT OF THE '672 PATENT)

80.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

81.    Cust2Mate has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the digital smart carts of the Accused Products.

82.    The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

83.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '672 Patent.

84.    The functions include identifying, via image recognition, an inventory of retail products physically located at a display location in the store, displaying information about the products, determining and displaying current pricing information, receiving real-time data of a customer using one or more information monitoring devices, and generating promotions for the customer based on behavioral analytics.



https://cust2mate.com/

85.    Cust2Mate has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

86.    The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

87.    Cust2Mate's infringing activities are and have been without authority or license under the '672 Patent.

88.    As a direct and proximate result of Cust2Mate's infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

89.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate has been aware of the '672 Patent and its infringement thereof due to the business relationship between Wakefern and Cust2Mate. Despite this knowledge, Cust2Mate has continued to make, use, sell, and offer for sale the Accused Products.

90.    Alpha Modus is informed and believes that Cust2Mate, at least through its relationship with Wakefern, knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, Cust2Mate has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

91.    Alpha Modus is informed and believes that Cust2Mate has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

92.    Therefore, Cust2Mate's infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

93.     As such, Cust2Mate has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)

94.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

95.     Cust2Mate is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

96.     Cust2Mate, through its partnership with customers, including Wakefern, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '672 Patent.

97.     Cust2Mate's use of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. Cust2Mate encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

98.     Cust2Mate's knowledge of the '672 Patent, at least through its relationship with Wakefern, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cust2Mate's knowledge and intent that the Accused Products be used in a manner that infringes the '672 Patent.

99.     Cust2Mate's actions and the manner in which the Accused Products are used in Cust2Mate's customers' stores, including in Wakefern-affiliated stores, consistent with Cust2Mate's instructions, demonstrate Cust2Mate's specific intent to induce infringement of the '672 Patent.

100.     Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with Wakefern, one or more claims of the '672 Patent.

101.     As a direct and proximate result of Cust2Mate's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

102.     Alpha Modus is entitled to recover from Cust2Mate compensation in the form of monetary damages suffered as a result of Cust2Mate's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

103.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

104.     Cust2Mate has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the digital smart carts and associated systems of the Accused Products.

105.     The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

106.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

problem. The smart cart allows the store manager to know where the customer is at all times, even at the level of tracking traffic jams in the aisles. This is critical information for managers."

https://cust2mate.com/technological-innovation/

107.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

108.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

"Yes. The cart can generate additional revenue for retailers. It is possible to display personalized advertisements on the cart's screen, based on the customer's location in the store. For example, a customer walking in the beverage area receives an offer for a sale on a Diet Coke six-pack. Since the cart also knows which products have been put in it, we also have the ability to measure the effectiveness of the ads."

https://cust2mate.com/technological-innovation/

109.    Cust2Mate has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

110.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

111.    Cust2Mate's infringing activities are and have been without authority or license under the '890 Patent.

112.    As a direct and proximate result of Cust2Mate's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

113.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate has been aware of the '890 Patent and its infringement thereof due to the business relationship between Wakefern and Cust2Mate. Despite this knowledge, Cust2Mate has continued to make, use, sell, and offer for sale the Accused Products.

114.    Alpha Modus is informed and believes that Cust2Mate, at least through its relationship with Wakefern, knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Cust2Mate has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

115.    Alpha Modus is informed and believes that Cust2Mate has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

116.    Therefore, Cust2Mate's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

117.    As such, Cust2Mate has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

118.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

119.    Cust2Mate is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

120.    Cust2Mate, through its partnership with customers, including Wakefern, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '890 Patent.

121.    Cust2Mate's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Cust2Mate encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

122.    Cust2Mate's knowledge of the '890 Patent, at least through its relationship with Wakefern, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cust2Mate's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

123.    Cust2Mate's actions and the manner in which the Accused Products are used in Cust2Mate's customer's stores, including in Wakefern-affiliated stores, consistent with Cust2Mate's instructions, demonstrate Cust2Mate's specific intent to induce infringement of the '890 Patent.

124.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with Wakefern, one or more claims of the '890 Patent.

125.    As a direct and proximate result of Cust2Mate's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

126.    Alpha Modus is entitled to recover from Cust2Mate compensation in the form of monetary damages suffered as a result of Cust2Mate's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

127.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

128.    Cust2Mate has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the digital smart carts and associated systems of the Accused Products.

129.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

130.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

"Yes. The cart can generate additional revenue for retailers. It is possible to display personalized advertisements on the cart's screen, based on the customer's location in the store. For example, a customer walking in the beverage area receives an offer for a sale on a Diet Coke six-pack. Since the cart also knows which products have been put in it, we also have the ability to measure the effectiveness of the ads."
https://cust2mate.com/technological-innovation/

131.    Cust2Mate's customers' retail stores, including Wakefern-affiliated retail stores, include a plurality of products stocked within the stores.

132.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

133.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

134.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

135.    Cust2Mate has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

136.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

137.    Cust2Mate's infringing activities are and have been without authority or license under the '880 Patent.

138.    As a direct and proximate result of Cust2Mate's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

139.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate has been aware of the '880 Patent and its infringement thereof due to the business relationship between Wakefern and Cust2Mate. Despite this knowledge, Cust2Mate has continued to make, use, sell, and offer for sale the Accused Products.

140.     Alpha Modus is informed and believes that Cust2Mate knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Cust2Mate has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

141.     Alpha Modus is informed and believes that Cust2Mate has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

142.     Therefore, Cust2Mate's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

143.     As such, Cust2Mate has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

144.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

145.     Cust2Mate is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

146.    Cust2Mate, through its partnership with customers, including Wakefern, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '880 Patent.

147.    Cust2Mate's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Cust2Mate encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

148.    Cust2Mate's knowledge of the '880 Patent and its business relationship with Wakefern, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cust2Mate's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent.

149.    Cust2Mate's actions and the manner in which the Accused Products are used in Cust2Mate's customers' stores, including in Wakefern-affiliated stores, consistent with Cust2Mate's instructions, demonstrate Cust2Mate's specific intent to induce infringement of the '880 Patent.

150.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with Wakefern, one or more claims of the '890 Patent.

151.    As a direct and proximate result of Cust2Mate's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

152.    Alpha Modus is entitled to recover from Cust2Mate compensation in the form of monetary damages suffered as a result of Cust2Mate's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '120 PATENT)

153.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

154.    Cust2Mate has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the digital smart carts of the Accused Products.

155.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the smart cart Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

156.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

157.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

### Computer Vision Reduces Friction and Optimizes Store Operations

Computer vision is redefining how retail leaders manage their physical environments. AI systems can use existing and new camera infrastructure to identify products, monitor shelf inventory and planogram compliance, trigger stock replenishment alerts, and analyze customer movement. AI systems can therefore improve store layout, assortment, product availability, traffic, and overall operations. Stores historically relied on manual activities to do all the above, but today advanced AI-based image analysis and reasoning enable retailers to automate many of those processes and further optimize their in-store operations.

https://cust2mate.com/the-ai-revolution-in-physical-retail-transforming-shopping-experiences/

158.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.  *Id*.

159.    Cust2Mate has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

160.    The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

161.    Cust2Mate's infringing activities are and have been without authority or license under the '120 Patent.

162.    As a direct and proximate result of Cust2Mate's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

163.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate has been aware of the '120 Patent and its infringement thereof due to the business relationship between Wakefern and Cust2Mate. Despite this knowledge, Cust2Mate has continued to make, use, sell, and offer for sale the Accused Products.

164.    Alpha Modus is informed and believes that Cust2Mate, at least through its relationship with Wakefern, knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, Cust2Mate has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

165.    Alpha Modus is informed and believes that Cust2Mate has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

166.    Therefore, Cust2Mate's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

167.    As such, Cust2Mate has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

168.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

169.    Cust2Mate is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

170.    Cust2Mate, through its partnership with customers, including Wakefern, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '120 Patent.

171.    Cust2Mate's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. Cust2Mate encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

172.    Cust2Mate's knowledge of the '120 Patent, at least through its relationship with Wakefern, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused

Products, demonstrates Cust2Mate's knowledge and intent that the Accused Products be used in a manner that infringes the '120 Patent.

173.    Cust2Mate's actions and the manner in which the Accused Products are used in Cust2Mate's customers' stores, including in Wakefern-affiliated stores, consistent with Cust2Mate's instructions, demonstrate Cust2Mate's specific intent to induce infringement of the '120 Patent.

174.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Cust2Mate, one or more claims of the '120 Patent.

175.    As a direct and proximate result of Cust2Mate's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

176.    Alpha Modus is entitled to recover from Cust2Mate compensation in the form of monetary damages suffered as a result of Cust2Mate's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT INFRINGEMENT OF THE '121 PATENT)

177.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

178.    Cust2Mate has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the digital smart carts of the Accused Products.

179.     The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the smart cart Accused Products at a retail store in a retail store setting, as claimed in the '121 Patent.

180.     The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '121 Patent.

181.     The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

Mordoch predicts that deploying the smart carts would significantly reduce the operating costs of the store. "Fifty carts make it possible to cut out several POS lines, which is a huge cost saving. In the US, for example, staffing cashier positions is a serious problem. The smart cart allows the store manager to know where the customer is at all times, even at the level of tracking traffic jams in the aisles. This is critical information for managers."

https://cust2mate.com/technological-innovation/

182.     The Accused Products generate allow the user to make in-cart payments in point-of-sale areas once the consumer has finished shopping, allowing the user to purchase the retained products quickly.

With thousands of carts deployed across four continents, the Cust2Mate 3.0 has a multifaceted solution that has simplified the checkout process by allowing shoppers to self-scan products and make in-cart payments. This facilitates a convenient, frictionless, 'pick and go' experience and eliminates the traditional checkout line or self-checkout issues.

https://cust2mate.com/cust2mate-transform-trolley-technolog/

183.     Cust2Mate has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

184.    The Accused Products satisfy each and every element of the asserted claim of the '121 Patent either literally or under the doctrine of equivalents.

185.    Cust2Mate's infringing activities are and have been without authority or license under the '121 Patent.

186.    As a direct and proximate result of Cust2Mate's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

187.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate has been aware of the '121 Patent and its infringement thereof due to the business relationship between Wakefern and Cust2Mate. Despite this knowledge, Cust2Mate has continued to make, use, sell, and offer for sale the Accused Products.

188.    Alpha Modus is informed and believes that Cust2Mate, at least through its relationship with Wakefern, knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, Cust2Mate has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

189.    Alpha Modus is informed and believes that Cust2Mate has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

190.    Therefore, Cust2Mate's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

191.    As such, Cust2Mate has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

## (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

192.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

193.    Cust2Mate is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '121 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

194.    Cust2Mate, through its partnership with customers, including Wakefern, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '121 Patent.

195.    Cust2Mate's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. Cust2Mate encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

196.    Cust2Mate's knowledge of the '121 Patent and its business relationship with Wakefern, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cust2Mate's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

197.    Cust2Mate's actions and the manner in which the Accused Products are used in Cust2Mate's customers' stores, including in Wakefern-affiliated stores, consistent with Cust2Mate's instructions, demonstrate Cust2Mate's specific intent to induce infringement of the '121 Patent.

198.    Alpha Modus is informed and believes, and on that basis alleges, that Cust2Mate knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Cust2Mate, one or more claims of the '121 Patent.

199.    As a direct and proximate result of Cust2Mate's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

200.    Alpha Modus is entitled to recover from Cust2Mate compensation in the form of monetary damages suffered as a result of Cust2Mate's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Cust2Mate as follows:

(A)    An entry of judgment that Cust2Mate has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Cust2Mate has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Cust2Mate, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Cust2Mate's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Cust2Mate's infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Cust2Mate be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against Cust2Mate is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of Cust2Mate, together with post judgment interest and prejudgment interest from the first date of infringement of the '672 Patent, the '880 Patent, the '890 Patent, the '120 Patent, and the '121 Patent; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated:  August 25, 2025

Respectfully submitted,

*/s/ Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino
Michigan Bar No. P79104
apellegrino@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com

PRINCE LOBEL TYPE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff Alpha Modus, Corp.*